UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DARRYL RANSOME,

**Plaintiff,**

              Case No. 1:19-cv-0723-TPK

  v,

**COMMISSIONER OF SOCIAL**          **OPINION AND ORDER**
**SECURITY,**

**Defendant**.

## OPINION AND ORDER

Plaintiff Darryl Ransome filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on April 5, 2019, denied Mr. Ransome's application for supplemental security income.  Mr. Ransome has now moved for judgment on the pleadings (Doc. 9), as has the Commissioner (Doc. 12).  For the following reasons, the Court will **DENY** Plaintiff's motion, **GRANT** the Commissioner's motion, and direct the Clerk to enter judgment in favor of the Defendant.

### I.  BACKGROUND

This case arises following a previous decision by this Court remanding the matter to the Commissioner for further proceedings.  *See Ransome v. Colvin,* 164 F.Supp. 3d 427 (W.D.N.Y. 2016).  Plaintiff had filed his most recent application for benefits on January 25, 2011, alleging that he became disabled on August 1, 2004, and subsequently amended that onset date to January 25, 2011.  As the Court's prior decision reflects, Plaintiff (who is now 54 years old) had argued for reversal of the ALJ's unfavorable decision because "the ALJ should have developed the record further by clarifying [examining psychologist] Dr. Jensen's vague opinion as to plaintiff's cognitive limitations."  *Ransome,* 164 F.Supp. 3d at 429.  This Court agreed, instructing the Commissioner, on remand, to "clarify Dr. Jensen's findings with regard to her statement of 'mild to marked' limitations in various areas related to cognitive functioning."  *Id*. at 432.

On remand, a new hearing was held before a different administrative law judge.  Prior to the hearing, the ALJ had scheduled Plaintiff for a new consultative examination, but he did not appear on either the original date for that examination or on a rescheduled date.  He also failed to appear at the new administrative hearing held on September 20, 2017, although counsel appeared on his behalf and a vocational expert, Dawn Blythe, gave testimony there.  The ALJ also made an unsuccessful effort to contact Dr. Jensen for clarification of her findings.

The Administrative Law Judge issued an unfavorable decision on April 19, 2018. She concluded that Plaintiff had not worked since his alleged onset date and that he suffered from severe impairments including anxiety disorder, post-traumatic stress disorder, substance abuse disorder, and asthma. She further found that none of these impairments were sufficiently severe to satisfy the criteria for disability set forth in the Listing of Impairments.

According to the ALJ, Plaintiff's multiple impairments limited him to the performance of work at all exertional levels with the following non-exertional limitations: he could perform only simple, routine tasks, could make only simple work-related decisions, could tolerate only minimal changes in work routines and processes, could occasionally interact with supervisors, co-workers, and the public, could not be subject to strict production quotas, and had to avoid concentrated exposure to extreme heat, cold, wetness, humidity, dust, odors, fumes and other pulmonary irritants.

At the hearing, the vocational expert testified that someone of Plaintiff's age and with his work and educational history could do various jobs consistent with the limitations found by the ALJ. Those jobs included housekeeper/cleaner, mail clerk, and laundry laborer. The vocational expert also testified to the number of such jobs in the national economy. The ALJ accepted that testimony, found that Plaintiff could do a significant number of jobs, and concluded that he was therefore not disabled within the meaning of the Social Security Act for the time period at issue.

Plaintiff, in his motion for judgment, asserts a single claim of error. He argues that the ALJ's residual functional capacity determination was not supported by substantial evidence because the current ALJ committed the same error as the prior ALJ and did not develop the record with a new opinion.

## II.  THE KEY EVIDENCE

Because Plaintiff's claim of error alleges that the ALJ did not cure the problems identified by the Court in its previous order of remand, it is helpful to begin with a review of that order and the evidence which the Court deemed vital to its decision.

In *Ransome, supra*, the Court noted that there was no treating source opinion concerning the extent of Plaintiff's mental impairments, and that the only two opinions on that subject came from Dr. Martha Totin, a non-examining source, and Dr. Sandra Jensen, who served as a consultative examiner. Dr. Jensen's examination took place in 2011. She noted that Plaintiff reported PTSD stemming from an earlier automobile accident and that his description of his symptoms suggested some type of traumatic brain injury. As a result, she found that his cognitive functioning was impaired, impacting his ability to concentrate, remember, and organize his thoughts and reducing his intellectual functioning from average to below average. He could do simple tasks but had a mild to marked impairment in multiple areas of functioning including maintaining attention and concentration, relating adequately to others, and dealing with stress. *Ransome, supra*, at 429-30. By contrast, Dr. Totin found no more that moderate limitations in

several areas of work-related functioning and speculated that Plaintiff's history of substance abuse may have influenced Dr. Jensen's findings.  Dr. Totin also advised against an organicity evaluation based on the absence of any evidence that Plaintiff had suffered from head trauma.  *Id*. at 430.  The Court found that the ALJ had erred in attributing more weight to the opinion of Dr. Totin than to that of Dr. Jensen, leading it to remand the case so that the ALJ might obtain clarification from Dr. Jensen about what she meant to convey by characterizing Plaintiff's level of impairment as "mild to marked."

There are also additional medical records pertinent to Plaintiff's mental impairments.  It is perhaps worth noting that the motor vehicle accident (or accidents) which may have caused some of those impairments occurred many years before Plaintiff the current application for benefits. Plaintiff continued to report anxiety issues to his primary care physician after 2012 and was taking medication for that condition.  The treatment notes indicate that he was appropriately oriented and did not show signs of anxiety, depression, or agitation.  Other notes show he was on Suboxone to treat his substance abuse disorder and that he also reported no neurologic or psychiatric issues and that his memory, attention, and concentration were intact.  In 2015 and again in 2017, he was treated at the emergency room for an suspected heroin overdose.  On his discharge in 2017 (which took place against medical advice) he was described as having no cognitive or functional deficits.

As noted, in 2017 the ALJ attempted to contact Dr. Jensen for clarification of her 2011 report.  Dr. Jensen's prior employer responded that she had not been employed with that practice group since 2012.  The record also reflects that multiple attempts were made to advise Plaintiff or his representatives about the new consultative examination but that he failed to appear on either of the scheduled dates.  Thus, there was no new opinion evidence for the ALJ to consider.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV. DISCUSSION

Because Plaintiff has faulted the current ALJ for making the same error as the prior one, it is first helpful to review the ALJ's decision to see why she continued to assign lesser weight to Dr. Jensen's opinion.

Before discussing the opinion evidence, the ALJ pointed out that throughout the relevant time period, Plaintiff's "psychiatric examinations were within normal limits" and "the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual...." (Tr. 555). She then addressed Dr. Jensen's report, giving it limited weight "because it was made so early in the period at issue that Dr. Jensen did not have the benefit of the full record, she appeared to extrapolate a traumatic brain injury based solely upon the claimant's self-report, and because the conclusion of 'mildly to markedly limited' was overly-broad and too vague for me to determine long-term disability." *Id.* Nevertheless, she used portions of the report to limit Plaintiff to the performance of simple tasks and to impose the other psychological restrictions contained in her residual functional capacity finding. The ALJ gave greater weight to Dr. Totin's report as being "consistent with the record as a whole" and as having been rendered by someone "with program knowledge" who was an "acceptable medical source...." (Tr. 556). Dr. Totin found no marked impairments except in the areas of setting realistic goals or making plans independently of others but did indicate that Plaintiff was moderately limited in a number of areas. However, she opined that he could do simple work in a low-contact setting.

Plaintiff advances several reasons in support of her argument that the ALJ's decision was erroneous. First, she notes that although Dr. Jensen did examine Plaintiff early in the process, Dr. Totin's opinion was rendered at about the same time, and, unlike Dr. Jensen, Dr. Totin did not have the benefit of examining Plaintiff. Plaintiff also argues that Dr. Totin's opinion was not, as the ALJ asserted, consistent with the record or with itself. She points out that Dr. Totin concluded both that Plaintiff would not have difficulty performing simple tasks in a low-contact environment and that he had moderate limitations in a number of work-related areas including maintaining attention and concentration for extended periods, responding to supervision, and

completing a workday or work week without interruption from psychologically-based symptoms. Plaintiff also contends that it was not just his report of symptoms upon which Dr. Jensen relied - which was a factor in the ALJ's decision to give Dr. Jensen's opinion limited weight - but also the objective results of her mental status exam. Finally, Plaintiff again faults the ALJ for not obtaining an updated opinion (although he does acknowledge her attempts to do so) and argues that Dr. Totin's opinion, even if credited, was outdated in light of a change in the regulatory criteria for evaluating mental impairments. In response, the Commissioner points to the evidence gathered subsequent to Dr. Jensen's examination which showed that Plaintiff's mental status was consistently within normal limits, and that the efforts made by the ALJ to develop the record were sufficient given Dr. Jensen's unavailability and Plaintiff's refusal to attend a new consultative examination.

Plaintiff's memorandum raises two conceptually distinct points - that the record, as it exists, insufficiently supported the ALJ's decision, and that the ALJ did not properly discharge her duty to develop the record. Although there is some overlap in these arguments, the Court finds it helpful to address them separately.

It was of obvious concern to the Court in its prior decision that the record concerning Plaintiff's mental impairment was, apart from the two opinions in question, very sparse. To a large extent, that concern has been addressed by the additional medical evidence in the record, even though that evidence does not include any additional opinions which address Plaintiff's overall mental functioning. As the ALJ correctly noted, in the five-year period which elapsed between the two administrative hearings, Plaintiff did not seek or receive any treatment for a traumatic brain injury, obtained relatively little treatment for an anxiety disorder, had normal mental status examinations, and did not demonstrate to any treating source the type of cognitive dysfunction which led Dr. Jensen to many of her conclusions. This enabled the ALJ not only to weigh Dr. Jensen's opinion against the opinion of Dr. Totin, which the Court, in its prior opinion, found to be both speculative to an extent and not based on an in-person examination of Plaintiff, but against a much more complete record. A reasonable person could easily have concluded that the additional medical evidence undercut the basis of Dr. Jensen's conclusions and that those conclusions deserved only limited weight. And it is fair to say that, in part, Dr. Jensen based her opinion on Plaintiff's subjective reporting; even her findings about his failure to complete certain memory tasks depended to some degree on his assertion that he was unable to perform them adequately. While that may not justify a large-scale discounting of the opinions Dr. Jensen expressed, it is something the ALJ was permitted to consider, especially in light of the fact that no other examiner noted any similar failures.

Plaintiff appears to argue that even if the ALJ was justified in discounting Dr. Jensen's findings and conclusions, she should not have relied on Dr. Totin's evaluation to the extent she did so. But the same reasons which permitted the ALJ to give less weight to Dr. Jensen's opinion allowed her to assign additional weight to that of Dr. Totin, since the subsequent record demonstrated the validity of at least some portions of that assessment, such as the absence of evidence of a traumatic brain injury or cognitive impairment. The Court also rejects the

contention that Dr. Totin's evaluation suffered from internal inconsistencies. Persons with moderate limitations in various areas of work-related functioning are usually deemed able to perform simple tasks, and Dr. Totin added a low-contact limitation based on her findings that Plaintiff would have some (but not work-preclusive) difficulties dealing with others in the workplace, including supervisors. The ALJ included in her residual functional capacity finding a restriction in Plaintiff's ability to interact with others, concluding that he could tolerate only occasional contact with supervisors, co-workers, and the public.

This Court has concluded, in other cases, that limiting a claimant to simple, routine tasks in an environment without production quotas and with only occasional interaction with others in the workplace is an adequate accommodate for moderate limitations in these areas. *See, e.g., Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 315 (W.D.N.Y. 2013) *(*"After reviewing the record evidence, the ALJ concluded that [the claimant] was able to perform simple, routine and repetitive tasks and that he could not perform production rate or pace work. These limitations are consistent with the ALJ's assessment that [the claimant] had moderate difficulties with concentration, persistence or pace due to his ADHD, difficulties reading, short-term memory problems, and [claimant's] statement that he does not handle stress properly"). The ALJ was therefore not required to give less weight to Dr. Totin's opinion based on these alleged internal inconsistencies. It is also worth noting that the ALJ did credit a number of the findings in Dr. Jensen's report as well, and that an ALJ may properly craft a residual functional capacity finding which is a blend of more than one medical opinion so long as that finding is supported by substantial evidence. *See, e.g., Riley v. Comm'r of Social Security*, 2019 WL 5287957, *4 (W.D.N.Y. Oct, 17, 2019). In short, the Court finds no error in the way that the ALJ weighed the opinion evidence in light of the entirety of the record, and no error in the way in which the ALJ made her residual functional capacity determination.

The other issue raised by Plaintiff's motion involves the ALJ's efforts to develop the record. There is no question that the ALJ made an effort to recontact Dr. Jensen and attempted to get Plaintiff to attend a new consultative psychological evaluation, even rescheduling that evaluation after Plaintiff missed the first appointment. Plaintiff correctly notes that the failure to attend such an examination is not, by itself, a sufficient reason to deny an application for benefits. But that is not what occurred here. The denial was based not on Plaintiff's failure to keep the examination appointments made for him nor on his failure to attend the second administrative hearing. Rather, it was based on an evaluation of the record. Therefore, Plaintiff's argument hinges on whether the record was sufficient to allow the ALJ to make a decision about the extent of Plaintiff's limitations.

As this Court has said,

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against

the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). "The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Puckett v. Berryhill*, No. 17 Civ. 5392 (GBD) (KHP), 2018 WL 6061206, at *2, 2018 U.S. Dist. LEXIS 197904, at *5 (S.D.N.Y. Nov. 20, 2018). The ALJ's duty to develop the record applies to both pro se and represented parties, and is heightened in the case of *pro se* plaintiffs." *Lopez v. Comm'r of Soc. Sec.,* No. 17-CV-1504(KAM), 2018 WL 5634929, at *5, 2018 U.S. Dist. LEXIS 186600, at *11 (E.D.N.Y. Oct. 31, 2018). However, the ALJ's duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information...." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).

*Vay v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 267, 272–73 (W.D.N.Y. 2018).

For many of the same reasons set forth in the Court's discussion on the issue of substantial evidence, the Court concludes that the ALJ did not have a duty to develop the record any further on the issue of Plaintiff's mental residual functional capacity.  In addition to the two opinions rendered in 2011, there are subsequent medical records (and a lack of records as to specific claimed impairments) which shed more light on how well Plaintiff was able to function. Since there are no obvious gaps in this record and the medical record was sufficient to permit the ALJ to make a reasoned determination of the issues, there is no basis for granting Plaintiff's request for a remand for further record development.

## V.  CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 9) and **GRANTS** the Commissioner's motion (Doc. 12). The Clerk is directed to enter judgment in favor of the Defendant.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**